[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 22-13903

Non-Argument Calendar

————————————————

JENNIFER GRIFFITH,

Plaintiff-Appellant,

*versus*

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cv-01698-KCD

————————————————

Before JILL PRYOR, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

An administrative law judge denied Jennifer Griffith's application for social security benefits, finding that she failed to show she is disabled. The district court affirmed the ALJ's decision. Griffith now appeals to this court, and we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case has a long procedural history, but the facts essential to this appeal are straightforward. Griffith first applied for disability insurance benefits and supplemental security income in 2010. She filed new claims in 2016, which were consolidated with her original claims.

### *Medical Evidence*

Griffith voluntarily admitted herself to a psychiatric hospital in 2010, reporting panic attacks, anxiety, and depression. Many mental-status examinations—more than thirty—were performed between 2010 and 2020 by both treating and consulting professionals, which showed that Griffith generally exhibited normal behavior, concentration, cognition, and memory with only mild abnormalities or impairments to judgment and insight.

Between 2011 and 2013, Griffith received outpatient psychiatric care from one of the hospital's doctors, Dr. Amit Desai. Griffith saw Dr. Desai six times during that span, and Dr. Desai

completed a "mental residual functional capacity form" during her fourth visit on June 21, 2012. This questionnaire asked Dr. Desai to rate Griffith's ability to perform certain functions in a workplace setting. The questionnaire listed four rating options: "Category I," indicating that the patient's impairment does not preclude performance of a function at all; "Category II," indicating that the impairment precludes performance for fifteen percent of an eight-hour workday; "Category III," indicating that the impairment precludes performance for twenty-five percent of an eight-hour workday; and "Category IV," indicating that the impairment precludes performance for at least half of an eight-hour workday. Dr. Desai selected Category IV for seven out of thirteen workplace functions. One of those functions was being able to "[p]erform activities within a schedule, maintain regular attendance[,] and be punctual." Dr. Desai also selected Category IV for functions such as "[c]omplet[ing] a normal workday . . . without interruptions" from symptoms; "[r]espond[ing] appropriately to supervisors, coworkers[,] and usual work situations"; and others about interacting with people generally.

For each of Griffith's visits, Dr. Desai documented his observations in treatment notes. In the notes for Griffith's first three visits, he wrote that she reported being depressed, unable to concentrate, and fatigued. But he also wrote that Griffith reported improvements with medication, had "[m]ild to [m]oderate" severity ratings for Axis IV, which relates to external stressors such as employment or financial status, and had "[m]oderate" Axis V GAF scores, which relate to how a person's symptoms affect her day-to-

day life.  And he documented that Griffith rated her symptom severity as a three on a scale of one to ten during each visit.  Dr. Desai's notes for the June 12, 2012 visit were similar.  He explained that Griffith had bipolar disorder and a history of related symptoms, such as mood swings and inability to concentrate.  But he also explained that Griffith was "doing okay with her depression" and was having a "moderate response" to medication.  His treatment notes for Griffith's two visits after June 2012 stated that Griffith again rated her symptom severity as a three out of ten.  Griffith rated her symptom severity up to a four or five a few times when examined by other medical professionals.

Dr. Richard Belsham, a consulting psychologist, examined Griffith in 2020.  Dr. Belsham reviewed a handful of Griffith's medical records and conducted an in-person examination.  His diagnostic impressions included major depressive disorder, which he categorized as "recurrent[ and] moderate-severe," and bipolar disorder.  But Dr. Belsham also opined on a "medical source statement" checklist that, except for a mild limitation as to complex decisions, Griffith's ability to "understand . . . and carry out instructions" was not affected at all by her impairments.  He separately opined that Griffith's "ability to interact appropriately with supervisors, co-workers, and the public, as well as respond to changes in a routine work setting," was affected by her impairments.  He indicated that Griffith's abilities to interact with others were limited up to a

moderate degree.[1]   He then indicated that Griffith's ability to "[r]espond appropriately to usual work situations and to changes in a routine work setting" was limited from a mild to marked degree.   Dr. Belsham explained that Griffith is "not comfortable around people," "doesn't get along w[ith] others," and her performance would be "contingent upon mood stability [and] anxiety."

### Procedural History

After a hearing, the ALJ issued an decision finding that Griffith failed to show she is disabled.  The ALJ applied 20 C.F.R. section 404.1520(a)(4)'s five-step framework.[2]   At step one, the ALJ found Griffith had not engaged in substantial gainful activity since

---

[1] In increasing order of severity, the checklist options were: (1) none, (2) mild, (3) moderate, (4) marked, and (5) extreme.  "Mild" indicates functioning in an area "is slightly limited."  "Moderate" indicates that functioning in an area "is fair."  "Marked" indicates functioning in an area is "seriously limited."  And "extreme" indicates that the person is "[u]nable to function in th[e] area."

[2] Step one asks if the claimant is engaged in substantial gainful work activity. 20 C.F.R. § 404.1520(a)(4)(i).  If not, then step two asks if the claimant has a "severe medically determinable" impairment under 20 C.F.R. section 404.1509.  *Id.* § 404.1520(a)(4)(ii).  Step three "consider[s] the medical severity of [the] impairment(s)."  *Id.* § 404.1520(a)(4)(iii).  Step four assesses the claimant's residual functional capacity, *id.* § 404.1520(a)(4)(iv), which reflects the most that she can do "in a work setting . . . despite [her] limitations," *id.* § 404.1545(a)(1).  And step five asks if, based on the residual functional capacity and other factors, the claimant "can make an adjustment to other work" that exists in the national economy.  *Id.* § 404.1520(a)(4)(v).  If the claimant alleges a mental impairment, then the ALJ must use the Psychiatric Review Technique (PRT) at steps two and three.  *See id.* § 404.1520a(a).

2010. Then at steps two and three, after a detailed discussion of Griffith's mental-status examinations, the ALJ found that Griffith has only moderate limitations when applying information, interacting with others, concentrating and maintaining pace, and adapting or managing herself.

Most relevant to this appeal is step four. The ALJ found Griffith has the residual functional capacity "to perform a full range of work at all exertional levels," subject to certain limitations. The first limitation was that Griffith should not be exposed to hazardous machinery, excessive noise, or unprotected heights. The second limitation was:

> [Griffith] is able to perform work involving simple, routine, repetitive tasks in a low stress job, defined as having only occasional decision-making and occasional changes in the work setting with no production rate or pace work comparable to an assembly line where one worker's pace affects the entire production process, with only occasional in-person interaction with the public, coworkers, and supervision.

The ALJ explained that he "considered all symptoms and the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." The ALJ explained that he "also considered opinion evidence in accordance with the requirements of 20 [C.F.R. section] 404.1527." The ALJ gave "significant weight" to Dr. Belsham, "little weight" to Dr. Desai, and partial, some, or little weight to opinions of other sources.

As to Dr. Belsham, the ALJ reasoned that he had the chance to review Griffith's records "from as far back as 2010 up through . . . 2018" and "perform a recent, thorough in-person interview and mental status examination."  The ALJ explained further that Dr. Belsham's findings regarding Griffith's mental status "were relatively unremarkable," were "relatively benign," and revealed mostly "minimal . . . deficits or abnormalities."  But "in consideration of the record as a whole, including the waxing and waning nature of [Griffith]'s symptoms" and her "history of mood, attitude, and behavior fluctuations," the ALJ found that "more restrictive limitations" in the residual functional capacity were necessary regarding her ability to interact with others and "to perform mental work functions."  To that end, the ALJ found that Griffith "would be better suited to performing simple, routine, repetitive tasks in a low-stress work environment, as detailed in the residual functional capacity assessment."

As to Dr. Desai, the ALJ found that the Category IV limitations indicated on the June 2012 questionnaire were "not supported by or consistent with" his treatment notes and other medical evidence.  The ALJ reasoned that Dr. Desai's notes showed he assessed Griffith's symptom severity as "mild to moderate," documented that Griffith herself regularly reported symptom severity as only a three out of ten, and documented that Griffith had a "modest medication response, okay depression, and mild mood swings."  The ALJ explained further that Dr. Desai's limitations "appear[ed] to be based on [Griffith's] subjective symptoms" instead of symptoms observed during the "objective" mental-status

examinations, which "showed only modest findings of fluctuating mood." And the ALJ noted that "Dr. Desai had only treated [Griffith] several times."

At step five, the ALJ relied on a vocational expert's testimony and found that Griffith could perform work that exists in the national economy.

Griffith filed a complaint in federal district court, seeking review of the ALJ's decision under 42 U.S.C. section 1631(c)(3). She argued that the ALJ's residual-functional-capacity finding didn't account for Dr. Belsham's opinion that she'd experience up to marked limitations when "respond[ing] appropriately to usual work situations and changes in a routine work setting," and she contended the ALJ erred by giving Dr. Desai's opinion little weight. The Commissioner responded that substantial evidence supported the ALJ's residual-functional-capacity finding and good cause for discounting Dr. Desai's opinion.

The district court agreed with the Commissioner and affirmed.[3] First, the district court concluded that substantial evidence supported the ALJ's residual-functional-capacity finding. It explained that Griffith's "normal mental status examinations, moderate abnormalities on examination, . . . [the] assessment of her impairments as only mild to moderate, [her] stability on [the] medication regimen without side effects, [her] self-reports of low

---

[3] Based on the parties' consent, the case was referred to a magistrate judge under 28 U.S.C. section 636(c).

symptom severity, [her] noncompliance with treatment, and [her] stability with compliance" all supported the ALJ's finding.  The ALJ accounted for Dr. Belsham's opinion by finding she could only tolerate a work setting with occasional changes and incorporating restrictive limitations on in-person interaction with others.

As to Dr. Desai, the district court concluded that the medical evidence and Griffith's self-reports showed her symptoms were milder than the severity indicated by Category IV, which is reserved for "significant mental limitations" that make a person unable to "function in a work environment."  Thus, the district court explained, a reasonable mind could agree with the ALJ that good cause existed to discount Dr. Desai's opinion as unsupported by and inconsistent with other evidence.

Griffith appeals the district court's decision affirming the ALJ's disability determination.

## STANDARD OF REVIEW

The social security regulations place a "very heavy burden on the claimant to demonstrate . . . a qualifying disability." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  When we review an ALJ's finding as to disability status, our role is "limited." *See Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985).  We cannot "decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [ALJ]." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001)).  Instead, while "scrutiniz[ing] the record as a whole," we must determine if the ALJ's

decision "is reasonable" and "supported by substantial evidence." *Spencer*, 765 F.2d at 1093 (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). "Substantial evidence" requires "more than a scintilla, but less than a preponderance." *Id.*

## DISCUSSION

Griffith argues that substantial evidence does not support the ALJ's decision because the ALJ did not properly account for Dr. Belsham's and Dr. Desai's opinions. We address her arguments as to each physician in turn.

### *Dr. Belsham*

Griffith's first argument is that although the ALJ gave Dr. Belsham's opinion significant weight, the ALJ's residual-functional-capacity finding "failed to incorporate or otherwise discredit" Dr. Belsham's opinion that Griffith experiences up to marked limitations when responding to "usual work situations" or "changes in a routine work setting." We conclude that substantial evidence supports the ALJ's residual-functional-capacity finding, which accounted for Dr. Belsham's opinion that Griffith can only tolerate few changes in a work setting.

The ALJ must determine a claimant's residual functional capacity "based on all the relevant evidence." 20 C.F.R. § 404.1545(a)(1), (3); *see also id.* § 404.1546(c). "Consideration of all impairments, severe and non-severe, is required." *Schink*, 935 F.3d at 1268–69 (citation omitted). "A limited ability to carry out certain mental activities, such as limitations which affect 'responding

appropriately to supervision, co-workers, and work pressures in a work setting,' may reduce a claimant's ability to do past work and other work." *Id.* at 1268 (quoting 20 C.F.R. § 404.1545(c)).

Here, the ALJ considered Griffith's ability to respond to usual work situations and changes in a routine work setting in light of the entire record, including Dr. Belsham's opinion. The ALJ thoroughly discussed Griffith's medical history, explaining that mental-status examinations revealed she generally had normal or near-normal mental status across ten years. That finding was consistent with how Griffith herself rated her symptoms' severity. The ALJ then discussed in detail Dr. Belsham's findings, plus the opinions of other professionals, Griffith's mom, and Griffith's friend. And based on the evidence as a whole, the ALJ then incorporated limitations on in-person interaction and "perform[ing] mental work functions" that were "more restrictive" than what Dr. Belsham even recommended. The ALJ found that Dr. Belsham's finding that Griffith has "difficulty managing stress," combined with her "history of . . . behavior fluctuations," showed she would be "better suited to . . . simple, routine, repetitive tasks in a low-stress work environment" with only "occasional changes in the work setting." Considering our deferential review, *see Spencer*, 765 F.2d at 1093, this explanation of the residual functional capacity was reasonable.

Griffith contends that our reasoning in *Simon v. Commissioner*, where we admonished that "[m]any mental disorders . . . are characterized by the unpredictable fluctuation of their symptoms,"

7 F.4th 1094, 1106 (11th Cir. 2021), is "strongly applicable" here.  In her view, the ALJ didn't account for the waxing and waning nature of her symptoms because he didn't expressly find she has any "marked" limitation.

But we disagree.  Although the ALJ in *Simon* failed to account for mental disorders' unpredictability by focusing on "snapshots" of the claimant's good moments, *see id.*, the ALJ here properly accounted for unpredictability and didn't focus on mere snapshots.  The ALJ explained that Griffith's records showed she "has a long history of mental health conditions primarily causing mood fluctuations."  And the ALJ found that this "waxing and waning nature of [her] symptoms" supported more restrictive limitations in the residual functional capacity.  That the ALJ didn't expressly reference the lone "marked" box that Dr. Belsham checked on the medical source statement does not render the residual functional capacity inconsistent with Dr. Belsham's opinion.  Even if it did, *Simon* addressed whether substantial evidence supported a finding that the treating physician's opinion was inconsistent with the record.  *See* 7 F.4th at 1106–07.  Unlike a treating physician, Dr. Belsham was a "one-time examiner," meaning that his opinion wasn't entitled to any special deference.  *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).

### Dr. Desai

Griffith's second argument relates to Dr. Desai.  The ALJ gave Dr. Desai's opinion little weight, and Griffith contends that was error for two reasons.  First, she argues that the ALJ evaluated

Dr. Desai's opinion under the wrong regulation—specifically, although the ALJ cited 20 C.F.R. section 404.1527, she contends the ALJ actually applied 20 C.F.R. section 404.1520c. Second, she contends that there was no good cause to discount Dr. Desai's opinion even if the ALJ applied the right framework. We disagree in both respects. The ALJ correctly evaluated Dr. Desai's opinion under section 404.1527, and substantial evidence supports the ALJ's application of it.

Generally, for claims like Griffith's that were filed before March 2017, a treating physician's opinion must be given "substantial or considerable weight unless good cause is shown to the contrary." *Schink*, 935 F.3d at 1259 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)); *see also Harner v. Comm'r*, 38 F.4th 892, 894 (11th Cir. 2022) (concluding that section 404.1520c abrogated the treating-physician presumption for claims filed after March 2017). We've identified three situations where good cause exists: (1) if the opinion is not "bolstered by the evidence," (2) where "the evidence support[s] a contrary finding," and (3) if the opinion is "conclusory or inconsistent with [the doctor's] own medical records." *Schink*, 935 F.3d at 1259 (citations omitted); *see also Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) ("Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding." (citation omitted)). Section 404.1527 identifies factors that ALJs may consider to evaluate medical opinions. *See* 20 C.F.R. § 404.1527(c). Those criteria include the claimant's relationship to the doctor, the opinion's supportability, and the consistency between the opinion and "the record as a whole."

*Id.*; *compare id.* § 404.1520c(c) (identifying factors for claims filed after March 2017, which also include supportability and consistency).

At the outset, nothing in the ALJ's decision suggests it applied the wrong framework. While Griffith contends that the ALJ necessarily applied section 404.1520c instead of section 404.1527 by focusing on supportability and consistency, those factors are relevant when evaluating a medical opinion under either regulation. *See id.* §§ 404.1527(c)(3)–(4), 404.1520c(c)(1)–(2). And Griffith herself acknowledges that the ALJ expressly cited section 404.1527 without ever citing section 404.1520c.

Turning to whether substantial evidence supports the ALJ's finding that Dr. Desai's opinion was worthy of little weight, we conclude that it does. Dr. Desai indicated that Griffith's ability to perform within a schedule, be punctual, complete a normal workday, and interact appropriately with others all fell within "Category IV"—the questionnaire's most extreme limitation. But Dr. Desai's treatment notes predating the questionnaire reflected that, across Griffith's visits, she reported symptom severity as only a three out of ten.

In the treatment notes for the same day Dr. Desai completed the questionnaire, he documented that Griffith was "doing okay with her depression" and had a "moderate response" to medication. These observations aren't consistent with and don't support Dr. Desai's Category IV markings, which indicated Griffith is effectively unable to function for at least half of a workday. *Cf. Phillips*, 357 F.3d at 1241 (concluding that substantial evidence supported

discounting a "very restrictive" assessment by treating physician when it was "contrary to [the claimant]'s admissions"). "We will not second guess the [ALJ] about the weight the treating physician's opinion deserves" where, as here, "[the ALJ] articulate[d] a specific justification for it." *Hunter v. Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

Even beyond the treatment notes, the ALJ reasonably found that other medical evidence wasn't consistent with and didn't support the extreme limitations. Griffith was examined many times between 2010 and 2020. These examinations generally revealed benign or modest symptoms, and not symptoms so severe that Griffith would be almost totally precluded from performing during a workday.

Griffith makes five arguments to the contrary, but none are convincing. First, Griffith contends that the ALJ improperly discounted Dr. Desai's opinions because she only visited Dr. Desai "several times." She points out that Dr. Belsham only examined her once but his opinion was afforded significant weight, suggesting that the ALJ failed to evaluate the opinions consistently. But the ALJ did not discount Dr. Desai's opinion solely because of the relatively short treatment relationship, which is a relevant factor. *See* 20 C.F.R. § 404.1527(c)(2)(i). The ALJ discounted Dr. Desai's opinion based on the low number of visits *in combination with* the opinion being undermined by other evidence. *Cf. Hudson v. Heckler*, 755 F.2d 781, 784 (11th Cir. 1985) (concluding good cause

supported discounting treating doctor's opinion where he only "saw [the claimant] twice" and submitted "conclusory notes").

Second, Griffith contends the ALJ should not have discounted Dr. Desai's opinions for relying on Griffith's self-reported subjective symptoms because psychiatric assessments are usually based on subjective symptoms. That's generally true. But this argument misrepresents what the ALJ actually did. To the extent the ALJ discounted Dr. Desai's opinion by relying on Griffith's self-reported symptoms, he did so because those symptoms weren't *consistent with* the objective examinations' findings. ALJs are supposed to evaluate a claimant's subjective symptoms in relation to other medical evidence in the record. *See Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1278 & n.16 (11th Cir. 2024) ("[R]ejecting a claimant's statements only because they are not corroborated by the medical evidence is a very different circumstance from when the claimant's statements are *inconsistent* with the medical or other evidence of record." (cleaned up)).

We also disagree with Griffith's third and related contention that, as to the severity of her symptoms, Dr. Desai's opinion was not inconsistent with her repeatedly rating severity around a three out of ten. Although she argues there was "no apparent relationship" between the self-assessments and actual severity, the ALJ could reasonably find otherwise. The few times that Griffith felt that her symptoms were more severe, she rated her symptom severity up to a four or five.

Fourth, Griffith argues the ALJ improperly relied on Dr. Desai's Axis IV and Axis V GAF ratings to discredit him. She contends that because the Axis IV rating relates to external stressors, such as financial status, Dr. Desai's Axis IV ratings of "mild to moderate" were "irrelevant" to his opinions on the questionnaire. As for the Axis V GAF scores, Griffith contends that the ALJ couldn't rely on those to discredit Dr. Desai because the ALJ gave the scores "no weight." Neither of these points are persuasive, either. Griffith cites no authority for her proposition that Axis IV ratings are irrelevant to symptom severity merely because they relate to external stressors. We're unclear on why external stressors can't contribute to psychological disorders or why only "mild to moderate" stressors cannot suggest a better prognosis. And even assuming that the ALJ relied on the Axis V GAF scores to discredit Dr. Desai (it doesn't appear to us that the ALJ did), it was unnecessary to give any weight to Dr. Desai's "moderate" GAF scores to explain why they were inconsistent with more extreme Category IV limitations.

Finally, Griffith argues that the ALJ "erred in describing [her] mood instability as intermittent and modest." She contends that her "treatment records instead document consistent mood fluctuations despite active medication management." But we've already explained how, regarding Dr. Belsham, the ALJ's residual-functional-capacity finding accounted for fluctuating symptoms. So, in essence, Griffith asks us to reweigh the evidence and find that her instability was more than intermittent and modest—something that we cannot do. *See Spencer*, 765 F.2d at 1093.

## CONCLUSION

Substantial evidence supports the ALJ's finding as to Griffith's residual functional capacity. And substantial evidence supports the ALJ's finding that Dr. Desai's opinion was entitled to little weight. Accordingly, the district court's order affirming the ALJ's decision is **AFFIRMED.**